**Leighton C. JOHNSON, Jr., M.D.,**
**Appellant–Defendant,**

v.

**James ELDRIDGE and Paula Eldridge,**
**Appellees–Plaintiffs.**

No. 49A02–0304–CV–316.

Court of Appeals of Indiana.

Nov. 21, 2003.

Rehearing Denied Jan. 20, 2004.

 

Edward L. Murphy, Jr., Diana C. Bauer, Miller Carson Boxberger & Murphy LLP, Fort Wayne, IN, Attorneys for Appellant.

Terry Kaiser Park, Caplin Park Tousley & McCoy, LLP, Indianapolis, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Leighton C. Johnson, Jr., M.D. ("Dr. Johnson") appeals the trial court's judgment awarding prejudgment interest to James and Paula Eldridge ("the Eldridges") at a rate of 8% for forty-eight months. Dr. Johnson appeals raising seven issues, which we combine and restate as:

I. Whether the trial court abused its discretion when it allowed prejudgment interest despite the filing of a partial satisfaction of judgment;

II. Whether the trial court abused its discretion when it awarded prejudgment interest under the "good cause" extension of time in Indiana Code section 34–51–4–6;

III. Whether the trial court abused its discretion when it awarded prejudgment interest to the Eldridges for a period of forty-eight months at 8% per annum; and,

IV. Whether the trial court erred when it entered judgment for Paula Eldridge in the amount of $500,000 and awarded her prejudgment interest.

Concluding that the trial court did not abuse its discretion when it awarded the Eldridges prejudgment interest in the amount of $32,000, but that Paula Eldridge was not entitled to judgment on her loss of consortium claim, we affirm in part and reverse in part.

## Facts and Procedural History

In July 1993, James Eldridge received treatment from Dr. Johnson at Castleton Orthopaedic Clinic. He later developed osteomyelitis and as a result became permanently disabled. On February 14, 1996, the Eldridges wrote to Dr. Johnson requesting settlement. Dr. Johnson declined to settle. A medical review panel was formed in 1997 and on November 18, 1999, rendered a unanimous opinion that Dr. Johnson failed to comply with the appropriate standard of care.

The Eldridges filed a complaint against Dr. Johnson and Castleton Orthopaedic Clinic in Marion Circuit Court on December 23, 1999. On February 21, 2000, the Eldridges again wrote Dr. Johnson about the possibility of settlement, but Dr. Johnson again declined to settle. On February 22, 2001, the parties attempted mediation, but the case was not settled. On March 30, 2001, roughly one month after mediation proved unsuccessful, the Eldridges wrote Dr. Johnson with a settlement offer, the terms of which included payment in an amount less than one and one-third of the eventual judgment amount and payment within sixty days. *See* Ind.Code § 34–51–4–6(2) and (3).[1] Appellee's App. p. 59. The

---

1. Indiana Code section 34–51–4–6 provides:
 This chapter does not apply if:
 (1) within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed;

Eldridges again wrote seeking settlement on May 17, October 12, and December 11, 2001. Appellee's App. pp. 60–62. Dr. Johnson refused each settlement offer.

The case proceeded to trial, and on January 24, 2002, a jury returned a verdict against Dr. Johnson in the amount of $3,399,731. On January 25, 2002, Dr. Johnson sought a reduction of the verdict to $750,000 pursuant to the damages cap of the Indiana Medical Malpractice Act.[2] On January 28, 2002, the Eldridges filed a motion for entry of judgment in accordance with the jury verdict and stated their intention to challenge the constitutionality of the damages cap in the Indiana Medical Malpractice Act. In another posttrial motion, the Eldridges sought prejudgment interest. Dr. Johnson filed his objection to prejudgment interest on February 12, 2002. A hearing on the Eldridges' constitutional challenge to the damages cap in the Indiana Medical Malpractice Act was set and then continued several times.

On November 19, 2002, Dr. Johnson sent the Eldridges a settlement offer, the terms of which included a $100,000 structured settlement and a waiver of claims for prejudgment interest. Appellant's App. p. 92. The parties then engaged in a series of phone calls, after which Dr. Johnson believed the case was settled. Dr. Johnson then filed a motion to enforce settlement agreement, alleging that the parties had "a valid and enforceable oral settlement agreement" on December 5, 2002. Appellant's App. p. 86. The trial court did not rule on this motion. On December 10, 2002, the Eldridges withdrew their objection to Dr. Johnson's motion for reduction of the verdict to $750,000. On December 26, 2002, Dr. Johnson sent·the Eldridges a check for $100,000.

On December 29, 2002, the trial court entered judgment for James Eldridge in the amount of $750,000 and for Paula Eldridge in the amount of $500,000 under the damages cap of Indiana Code section 34–18–14–3(a)(2). On that date, the trial court also entered a separate order awarding the Eldridges prejudgment interest at a rate of 8% on Dr. Johnson's statutory liability of $100,000 on each judgment. The Eldridges filed a partial satisfaction of judgment on January 20, 2003. Dr. Johnson then filed a motion to correct error challenging the trial court's award of prejudgment interest and the $500,000 judgment entered for Paula Eldridge. The trial court denied the motion to correct error on February 20, 2003. This appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

 Initially, we note that prejudgment interest represents an element of complete compensation. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440–41 (Ind.Ct.App.2000), *trans. denied.* As such, prejudgment interest is not simply an award of interest on a judgment, but rather is recoverable as "additional damages to accomplish full compensation." *Harlan Sprague Dawley v. S.E. Lab Group*, 644 N.E.2d 615, 619 (Ind.Ct. App.1994), *trans. denied.*

The Tort Prejudgment Interest Statute permits a trial court to award prejudgment interest to the party that prevails at trial, so long as that party has made a timely offer of settlement according to terms specified in the statute. *See* Ind.Code

---

(2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted; or

(3) the amount of the offer exceeds one and one-third (1 ⅓) of the amount of the judgment awarded.

2. Ind.Code § 34–18–14–3(a)(2) (1999).

§§ 34–51–4–5 and –6 (1999). The trial court may award prejudgment interest as part of a judgment. Ind.Code § 34–51–4–7 (1999). The statute limits the rate of prejudgment interest that a trial court may award to a minimum of six percent and a maximum of ten percent per year. *See* Ind.Code § 34–51–4–9 (1999). The trial court is further limited to awarding prejudgment interest for a maximum period of forty-eight months. Ind.Code § 34–51–4–8 (1999).

▉▉ The purpose of the Tort Prejudgment Interest Statute is to encourage settlement and to compensate the plaintiff for the lost time value of money. *Cahoon v. Cummings*, 734 N.E.2d 535, 547 (Ind. 2000).

> Prejudgment interest addresses the same problem as post judgment interest. If a defendant has the option to terminate the dispute at a known dollar cost, and chooses not to do so, that defendant and not the plaintiff should bear the cost of the time value of money in the intervening period if the ultimate result is within the parameters set by the legislature. *Id.*

Prejudgment interest is recoverable from a health care provider on the amount of the judgment against that provider. *Emergency Physicians of Indianapolis v. Pettit*, 718 N.E.2d 753, 757 (Ind.1999). However, prejudgment interest is not recoverable from the patient's compensation fund. *See* Ind.Code § 34–51–4–2 (1999). Because a judgment obtained against a health care provider is subject to a statutory cap, and prejudgment interest is not available from the patient's compensation fund, "this will not provide the plaintiff with full relief, but it is the balance the legislature has struck between the competing interests of fairness and encouragement to settle reflected in the prejudgment interest statute and the Medical Malpractice Act's concern for health care cost containment." *Cahoon*, 734 N.E.2d at 547–48 (Ind.2000).

## I. Partial Satisfaction of Judgment

▉ We evaluate the award of prejudgment interest under an abuse of discretion standard. *Bopp v. Brames*, 713 N.E.2d 866, 872 (Ind.Ct.App.1999), *trans. denied* (citing *Harlan Sprague Dawley, Inc. v. S.E. Lab Group Inc.*, 644 N.E.2d 615, 617 (Ind.Ct.App.1994), *trans. denied* ). The decision to award prejudgment interest rests on a factual determination, and this court may only consider the evidence most favorable to the judgment. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Brademas v. South Bend Cmty. Sch. Corp.* 783 N.E.2d 745, 750 (Ind.Ct.App.2003), *trans. denied.*

In his motion to correct error, which the trial court denied, Dr. Johnson argued that the partial satisfaction of judgment precluded an award of prejudgment interest to the Eldridges. However, the prejudgment interest award was not included as part of the $750,000 judgment against Dr. Johnson. The order awarding prejudgment interest was issued on the same day as the judgment against Dr. Johnson, but was contained in a separate and distinct order. Appellant's App. pp. 34–38.

The partial satisfaction of judgment filed by the Eldridges read:

> Plaintiffs, James and Paula Eldridge, by counsel hereby acknowledge receipt of monies paid on behalf of Leighton C. Johnson, Jr., M.D. in partial satisfaction of **the judgment** entered in the above proceeding. In consideration of that payment, plaintiffs, James Eldridge and Paula Eldridge, through counsel, hereby release Leighton C. Johnson, Jr., M.D.

from all responsibilities and duties imposed by **that judgment** (emphasis added).

Appellant's App. p. 102.

The partial satisfaction of judgment referred to a singular judgment and made no specific reference to the separate order for prejudgment interest. Under these facts and circumstances, we conclude that the trial court did not abuse its discretion in awarding the Eldridges prejudgment interest.

## II. Good Cause for Extension of Time Under Indiana Code section 34–51–4–6

■ Dr. Johnson also argues that the trial court erred in awarding prejudgment interest because the Eldridges failed to satisfy the statutory requirements of the prejudgment interest statute. For a plaintiff to be eligible for prejudgment interest, Indiana Code section 34–51–4–6 requires service of a written offer of settlement to the defendant within one year of the filing of the complaint or "any longer period determined by the court to be necessary upon a showing of good cause." Ind.Code § 34–51–4–6(1) (1999). Dr. Johnson argues that the trial court erred in finding that the Eldridges had shown "good cause" for an extension of the one year time limit.

■ When deciding questions of statutory interpretation, appellate courts need not defer to a trial court's interpretation of the statute's meaning; rather, appellate courts independently review the statute's meaning and apply it to the facts of the case under review. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001). We note that a court may not construe a statute in a manner that would impair the function the legislature intended it to possess. *Van Winkle v. Nash*, 761 N.E.2d 856, 860 (Ind.Ct.App. 2002) (citing *In re the Visitation of J.P.H.*, 709 N.E.2d 44, 46 (Ind.Ct.App.1999)).

Rather, the foremost objective of a court in interpreting a statute is to determine and effect legislative intent. *Id.* As previously noted, the purpose of the Tort Prejudgment Interest Statute is to encourage settlement and to compensate the plaintiff for the lost time value of money. *Id.* (citing *Cahoon v. Cummings*, 734 N.E.2d 535, 547 (Ind.2000)).

In *Cahoon*, our supreme court held that an offer to settle "now" met the statute's requirement of an offer to settle within sixty days. 734 N.E.2d at 547. The requirement that the offer require payment within sixty days "is intended to deal with the point that an offer to settle on some structured basis by periodic or long distant lump payments is worth less in present dollars. The whole point of the statute is to address the cost of delay in payment." *Id.*

Dr. Johnson acknowledges that the Eldridges made several offers of settlement prior to the one year deadline, but points out that none of those offers complied with the statute's specific requirement that the offer demand payment of the settlement within sixty days of acceptance. Br. of Appellant at 25. Both parties acknowledge that the first offer for settlement that fully complied with Indiana Code section 34–51–4–6 came on March 30, 2001, roughly fifteen months after the complaint was filed, and one month after mediation proved unsuccessful. The trial court found this offer timely under the statute's "good cause" exception. In its order for prejudgment interest, the trial court found the fact that "[t]he record is besieged by settlement requests from Eldridge over five years" and that the parties had been attempting mediation demonstrated sufficient good cause for an extension of time. Appellant's App. p. 37. The statute leaves the determination of the necessity for an

extension of time to the trial court. *See* Ind.Code § 34–51–4–6(1). Further, in light of *Cahoon's* broad interpretation of a qualifying demand for payment within sixty days of settlement, it was clearly within the trial court's discretion to determine that a settlement offer made three months late because the parties were awaiting mediation qualifies as a good cause for an extension of time.

While the Eldridges did not make a settlement offer complying with the requirements of Indiana Code section 34÷51–4–6 within one year, they did make such an offer promptly after mediation efforts proved unsuccessful. The Eldridges also made repeated offers to settle the matter, beginning before they even filed their complaint. Under these facts and circumstances, we agree with the trial court that the Eldridges "certainly [ ] earned an allowance of three extra months after five years of trying." Appellant's App. p. 37.

### III. Rate and Period of Interest

■ Dr. Johnson next argues that the trial court erred in awarding the Eldridges prejudgment interest at a rate of 8% for a period of forty-eight months. He argues that the rate is too high in light of present interest rates and that the time period should be reduced by the amount of delay caused by the Eldridges. Indiana Code section 34–51–4–9 allows the rate of interest to be determined by the court, but provides that it may not be less than 6% or more than 10% per year. Here, the court awarded interest at a rate of 8%, the midpoint of the range allowed by the statute. Prejudgment interest began accruing on December 14, 1997, 180 days after the medical review panel was formed. *See* Ind.Code § 34–51–4–8(a)(3)(1999). Appellee's uncontroverted evidence indicates that the prime interest rate at that time was 8.5%. Until judgment was entered on December 29, 2002, the prime interest rate

varied considerably, reaching a high of 9.5% in 2000 and a low of 4.25% in late 2002. Appellee's App. p. 97. As such, the trial court was within its discretion to award prejudgment interest at rate of 8%.

■ Dr. Johnson also argues that the trial court erred in failing to deduct from the period of prejudgment interest delays directly caused by the Eldridges, specifically their continuance of the first trial setting and their constitutional challenge to the damages cap of the Medical Malpractice Act. Indiana Code section 34–51–4–8 provides that:

(a) If the court awards prejudgment interest, **the court shall determine the period during which prejudgment interest accrues.** However, the period may not exceed forty-eight (48) months. Prejudgment interest begins to accrue on the latest of the following dates:

(1) Fifteen (15) months after the cause of action accrued.

(2) Six (6) months after the claim is filed in the court if IC 34–18–8 and IC 34–18–9 do not apply.

(3) One hundred eighty (180) days after a medical review panel is formed to review the claim under IC 34–18–10 (or IC 27–12–10 before its repeal).

(b) The court shall exclude from the period in which prejudgment interest accrues any period of delay **that the court determines is caused by the party petitioning for prejudgment interest** (emphasis added). Ind.Code § 34–51–4–8 (1999).

In their brief, the Eldridges acknowledge that the continuance of the first trial date added approximately seven months to the period of time for which prejudgment interest could be awarded. However, they argue that the continuance was necessary since the trial court calendar allotted only five days for the trial and both parties

determined that the trial would take more time. Br. of Appellee at 14. The Eldridges also argue that the delay caused by their constitutional challenge to the damages cap was in part due to continuances requested by Dr. Johnson and intervening parties. Br. of Appellee at 14. Indiana Code section 34–51–4–8(a) provides the trial court discretion in determining the period during which prejudgment interest accrues, up to forty-eight months. Further, Indiana Code section 34–52–4–8(b) provides the trial court discretion to determine the amount of delay caused by the party seeking prejudgment interest. Under these facts and circumstances, we cannot conclude the trial court abused its discretion in awarding the Eldridges prejudgment interest for forty-eight months at a rate of 8%.

### V. Paula Eldridge's derivative claim

■ Finally, Dr. Johnson argues that Paula Eldridge's loss of consortium claim is a derivative claim and that damages awarded to her are included within the $750,000 statutory damages cap applicable to her husband's claim. *See Goleski v. Fritz*, 768 N.E.2d 889 (Ind.2002); *Indiana Patient's Compensation Fund v. Wolfe*, 735 N.E.2d 1187 (Ind.Ct.App.2000), *trans. denied.* The Eldridges concede this point and stipulate that the partial satisfaction of judgment filed disallowed Paula Eldridge's separate judgment of $500,000, as well as her award of prejudgment interest. Therefore, we reverse the trial court's judgment in favor of Paula Eldridge for

$500,000, as well as her award of prejudgment interest.

### Conclusion

We conclude that the trial court did not abuse its discretion in awarding prejudgment interest to the Eldridges at a rate of 8% for forty-eight months. However, we reverse the trial court's judgment in favor of Paula Eldridge and her award of prejudgment interest.[3]

Affirmed in part and reversed in part.

NAJAM and ROBB, JJ., concur.

---

**3.** The Eldridges, without making any separate argument, request "costs of this appeal" in the Conclusion section of their brief. Indiana Appellate Rule 67 provides for the assessment of costs on appeal, which include the filing fee, the cost of preparing the Record on Appeal, postage, and "additional items as permitted by law." An award of costs under this rule is discretionary and may be ordered when an appeal is "permeated with meritless-

ness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Commercial Coin Laundry Systems v. Enneking*, 766 N.E.2d 433, 442 (Ind.Ct.App.2002) (citing *Orr v. Turco Mfg. Co. Inc.*, 512 N.E.2d 151, 152 (Ind.1987)). The Eldridges have not alleged that Dr. Johnson's appeal is meritless or in bad faith; and indeed, we find that it was neither. Therefore, we deny their request for costs.