**R & R REAL ESTATE COMPANY, LLC, and Leland Roberts, Appellants–Plaintiffs/Cross–Appellees,**

v.

**C & N ARMSTRONG FARMS, LTD., Appellee–Defendant/Cross–Appellant.**

No. 33A01–0507–CV–294.

Court of Appeals of Indiana.

Aug. 31, 2006.

Rehearing Denied Nov. 1, 2006.

Anthony J. Saunders, New Castle, IN, Attorney for Appellants.

Joel E. Harvey, Hayes Copenhaver Crider, New Castle, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

R & R Real Estate Company, LLC, and Leland Roberts (collectively, "R & R") appeal the denial of R & R's claim for grain bin rental damages and the denial of prejudgment interest. On cross-appeal, C & N Armstrong Farms, Ltd. ("C & N"), con-

tends that R & R's appeal should be dismissed pursuant to Indiana Code Section 34–56–1–2 and that C & N should have received a setoff for the cost of repairing grain bins and a grain auger on R & R's property. We affirm.

## Issues

We combine, restate, and reorder the parties' issues as follows:

I. Whether R & R's appeal should be dismissed pursuant to Indiana Code Section 34–56–1–2;

II. Whether R & R should have recovered damages for grain bin rental;

III. Whether C & N should have received a setoff for the cost of repairing grain bins and a grain auger on R & R's property; and

IV. Whether R & R should have been awarded prejudgment interest.

## Facts and Procedural History

The facts most favorable to the judgment indicate that in the fall of 2000, the parties orally agreed that C & N would pay $92.00 per acre to farm approximately 707 acres owned by R & R. The lease payment of $65,044 [1] was due by December 1 of each farm year. The parties also agreed that C & N would pay $0.10 per bushel to store grain in nine bins located on R & R's property and would also "repair all bins and keep them in working condition." Appellants' App. at 70 (finding 4). The parties further agreed to take steps to enroll in the federal farm subsidy program and that each party would receive one-half of any subsidy payment.[2] Howev-

er, R & R refused to sign Form 515, the subsidy program enrollment form, for the 2002 farm year.

On December 10, 2002, R & R filed a one-count complaint against C & N for nonpayment of the lease for the 2002 crop year. On March 10, 2003, C & N filed its answer, affirmative defenses, and counterclaims. Counterclaim IV alleged that C & N had repaired grain bins and a grain auger on R & R's property and that R & R had been unjustly enriched thereby. Counterclaim V alleged that R & R had requested and received 717.9 bushels of corn from C & N but had failed to make payment. On May 5, 2003, after R & R signed Form 515 for the 2002 farm year subsidy, C & N presented to R & R a certified check in the amount of $12,500.

On December 2, 2003, C & N's president gave his counsel, on behalf of C & N, four checks totaling $47,179.86. The four checks were tendered to R & R's counsel on January 8, 2003, but R & R did not present the checks for payment. Ultimately, R & R accepted payment of $59,679.86 at mediation in March 2004.[3]

Also in March 2004, R & R filed a five-count amended complaint. Count I alleged nonpayment of the farm lease. Count II alleged that R & R had presented C & N's four lease checks for payment and that C & N had insufficient funds in its bank account. C & N filed its answer in May 2004.

A bench trial was held in January 2005. On April 14, 2005, the trial court issued findings of fact and the following conclusions thereon:

---

1. 707 acres × $92.00/acre = $65,044.

2. According to the trial court, "[l]and can only be put in the Federal Farm Program if the person who farms it puts it in the Program and the landowner signs the proper documentation. The Federal Farm Program

checks are always made out to the person who farms the land." Appellants' App. at 74 (findings 5 and 6).

3. $47,179.86 + $12,500 = $59,679.86.

1. [R & R] failed to mitigate any [prejudgment] interest damages by not negotiating tendered payments which were made to [it] by [C & N] in the form of checks ... in the amount of $47,179.86. The delay in payment was not unreasonable given the various disputes that had arisen between the parties.

2. [R & R] failed to mitigate [its] damages by failing to sign the Federal Farm Program Form 515 until after the suit was filed.

3. [C & N] paid to [R & R] Twelve Thousand Five Hundred Dollars ($12,500.00) by certified check on May 5, 2003, which was the earliest it could be paid because of [R & R's] refusal to sign the Form 515's.

4. [R & R is] due the sums of $65,044.00 for the 2002 farm year and $6,550.00 for one-half of the federal farm payment for a total due of $71,594.00. [C & N has] paid $59,679.86 leaving a balance due and owing from [C & N] to [R & R] in the amount of Eleven Thousand Nine Hundred [Fourteen and] 14/100 Dollars *($11,914.14)* under Count I of the Amended Complaint.

5. [R & R] failed to carry the burden of proof regarding Counts II and III of the Amended Complaint and shall take nothing by way of these Counts. [Counts IV and V were resolved in earlier proceedings.]

6. [C & N] has failed to carry [its] burden of proof regarding the equitable defenses contained in Counts II, III and IV of the Answer and counterclaim.

7. [R & R owes] to [C & N] the sum of One Thousand Seven Hundred Forty-one and 50/100 Dollars ($1,741.50) under Count V of [C & N's] Answer and Counterclaim and said amount should be set-off against the judgment awarded to [R & R].

8. That [C & N] has established the equitable defense of failure to mitigate regarding [R & R's] claim for [prejudgment] interest.

. . . .

[R & R] shall be awarded a judgment against [C & N] in the amount of Ten Thousand One Hundred Seventy-two and 64/100 Dollars *($10,172.64)*. Said judgment shall bear interest at the rate of 8% per annum.

*Id.* at 77–78.

On May 13, 2005, R & R filed a motion to correct error. On May 20, 2005, C & N presented a check in the amount of $10,252.92 to the Henry County court clerk as payment of the judgment in favor of R & R. On May 24, 2005, the clerk issued to R & R a check in the amount of $10,252.92, which R & R deposited approximately two days later. After R & R's motion to correct error was deemed denied, this appeal and cross-appeal ensued.

## Discussion and Decision
### *Standard of Review*

▮ Where, as here, a party has requested special findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. *Ralph E. Koressel Premier Elec., Inc. v. Forster,* 838 N.E.2d 1037, 1045 (Ind. Ct.App.2005).

In reviewing the judgment, we first must determine whether the evidence supports the findings, and second, whether the findings support the judgment. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. The judgment will be reversed if it is clearly erroneous. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favor-

able to the judgment and all reasonable inferences flowing therefrom. We will not reweigh the evidence or assess witness credibility. Even though there is evidence to support it, a judgment is clearly erroneous if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made.

*Id.* (citations omitted).[4]

## I. Dismissal of R & R's Appeal Pursuant to Indiana Code Section 34–56–1–2

We first address C & N's argument that R & R's appeal should be dismissed pursuant to Indiana Code Section 34–56–1–2, which states, "The party obtaining a judgment shall not take an appeal after receiving any money paid or collected on a judgment." Our supreme court has explained the import of this statute as follows:

This statute is merely declaratory of the common-law rule, which holds that a party cannot accept the benefits of a decision and yet claim it is erroneous. The basis for such a principle is that the law does not permit such inconsistent positions to be taken. One cannot affirm and deny the same thing. Or, as some courts have said, the party is estopped to deny the validity of a proceeding which he has approved.

It follows, however, that where no inconsistency in the position taken exists, the general rule is not applicable. An acceptance of an amount to which the acceptee is entitled in any event, does not estop him from appealing or claiming error in the judgment, since there is no inconsistency in such a position. 4

C.J.S. Appeal and Error § 216(1), p. 650 says:

"The rule that a party cannot maintain an appeal or writ of error to reverse a judgment or decree after he has accepted payment of the same in whole or in part has no application, as a rule, where appellant is shown to be so absolutely entitled to the sum collected or accepted that reversal of the judgment or decree will not affect his right to it, as in the case of the collection of an admitted or uncontroverted part of his demand, and in other similar cases, as where his appeal is to establish his claim to something additional or to a greater amount."

*Ind. & Mich. Elec. Co. v. Louck,* 243 Ind. 17, 21–22, 181 N.E.2d 855, 856–57 (1962) (citations omitted).

■ On cross-appeal, C & N claims that it should have received a setoff based on its repair of the grain bins and grain auger on R & R's property. C & N contends that by filing a notice of appeal, R & R "made it possible for C & N to assert cross-errors that could reduce the sum awarded to [R & R] at trial. . . . Thus, it cannot be said that at the time [R & R] accepted the judgment payment made by C & N, that [R & R was] absolutely entitled to the amount awarded by the trial court." Appellee's Br. at 16. Therefore, C & N argues, R & R's appeal does not fall within the common law exception to Indiana Code Section 34–56–1–2 and should be dismissed.

We disagree. None of the Indiana cases cited by the parties or unearthed in our research involved a cross-appeal from a judgment accepted by the appellant. The

---

4. Both parties submitted proposed orders to the trial court. R & R seems to suggest that the trial court adopted C & N's order verbatim. Appellant's Br. at 11. Although portions of the trial court's order closely follow C

& N's proposed order, the trial court drafted many of its own findings and conclusions. *Compare* Appellants' App. at 59–68 (C & N's proposed order) *with id.* at 69–78 (trial court's order).

Supreme Court of Oregon was confronted with such a case and addressed the cross-appellant's motion to dismiss the appeal as follows:

> We do not believe that the plaintiffs' appeal should be dismissed because the defendant has cross appealed. If the defendant had not filed a cross-appeal, it is clear that the court could not have dismissed plaintiffs' appeal on the grounds that plaintiffs had accepted part of the benefits. . . .

> If a cross-appeal could prevent the original appellant from pursuing a valid appeal on the grounds the cross-appeal allows the appellate court to possibl[y] reduce the award given the original appellant, the cross-appeal could be used as a vehicle to dismiss the original appeal. The losing party could pay part of the judgment, file what could amount to a completely spurious cross-appeal, and by doing so secure the dismissal of the original appeal.

*Schlecht v. Bliss,* 271 Or. 304, 532 P.2d 1, 6 (1975), *disapproved on other grounds by Illingworth v. Bushong,* 297 Or. 675, 688 P.2d 379 (1984). *See also Marriage of Mask,* 143 Or.App. 377, 923 P.2d 1304, 1305–06 (1996) (relying on *Schlecht* in denying cross-appellant husband's motion to dismiss wife's appeal); *Stevens Constr. Corp. v. Draper Hall, Inc.,* 73 Wis.2d 104, 242 N.W.2d 893, 896 (1976) ("As long as the party accepting the money has not put his right to that money in jeopardy in his own appeal, there is no waiver, even though his right to the money may be endangered by his opponent's cross-appeal or notice of review.") (footnote omitted).

Likewise here, if C & N had not filed a cross-appeal, it is clear that we could not dismiss R & R's appeal on the grounds that it had accepted $10,252.92 from C & N. R & R contends that it is entitled to more, and a reversal of the judgment based on R & R's appeal would not result in R & R receiving any less. While we do not suggest that C & N's cross-appeal is spurious, we agree with the Supreme Court of Oregon's rationale for denying a cross-appellant's motion to dismiss in similar cases. To conclude otherwise would be to encourage gamesmanship and to discourage prompt satisfaction of judgments. We therefore deny C & N's request to dismiss R & R's appeal pursuant to Indiana Code Section 34–56–1–2.

## II. R & R's Damages for Grain Bin Rental

■ In its original complaint, R & R alleged that C & N had agreed to pay "the sum of Ninety–Two Dollars ($92.00) per acre plus certain sums due and owing on grain bins" and that C & N owed R & R a total of $70,583.03 for the 2002 farm year. Appellants' App. at 13. As previously mentioned, C & N's obligation for farming the 707 acres was $65,044, or $5,539.03 less than the total damages alleged in R & R's complaint, and the grain bin rental rate was $0.10 per bushel. At trial, R & R offered into evidence Plaintiff's Exhibit 1, which purports to show that C & N owed R & R a total of $70,583.03, excluding interest, for the 2002 farm year and states that the balances shown were "based upon full payment for the rent of land and the bins per the rental agreement." R & R's Gary Roberts testified that R & R made the grain bins available to C & N in 2002 and that C & N used the bins that year. Tr. at 60. R & R notes that C & N did not rebut this testimony and asserts that the trial court improperly denied its damages claim for grain bin rental.

■ We disagree. "In actions for breach of contract, damages must be proven with reasonable certainty." *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind.Ct.App.2002). "While the plain-

tiff need not prove the amount of damages suffered to a mathematical certainty, the award must be supported by evidence in the record." *Gigax v. Boone Vill. L.P.*, 656 N.E.2d 854, 856 (Ind.Ct.App.1995). "[A] factfinder may not award damages on the mere basis of conjecture or speculation." *Noble Roman's*, 760 N.E.2d at 1132. As the party that had the burden of proving damages, R & R is appealing from a negative judgment. *See id.* Consequently, R & R must demonstrate that the damage award is clearly erroneous or contrary to law to have it set aside. *Id.*

As C & N points out, R & R offered no evidence regarding the number of bushels that C & N actually stored in the grain bins during the 2002 farm year. Plaintiff's Exhibit 1 does not itemize R & R's alleged damages and is conclusory at best. In sum, any award for grain bin rental would be based on conjecture and speculation. We therefore conclude that R & R has failed to demonstrate clear error.

### III.  Setoff for C & N's Repair of Grain Bins and Grain Auger

■ On cross-appeal, C & N contends that it should have received a setoff for its repair of grain bins and a grain auger on R & R's property. Over a century ago, our supreme court stated, "That the tenant cannot charge his landlord for improvements made upon the leased property, except by express contract, is too well settled to demand a citation of authority[.]" *Harry v. Harry*, 127 Ind. 91, 94, 26 N.E. 562, 563 (1891). The trial court found that the parties had agreed that C & N "would repair all bins and keep them in working condition[,]" Appellants' App. at 70 (finding 4), but it did not find that the parties

had expressly agreed that R & R would reimburse C & N for the repairs. In view of the conflicting evidence on this point,[5] which we must construe in favor of the trial court's judgment, we conclude that C & N has failed to demonstrate clear error.[6]

### IV.  Prejudgment Interest

■ Finally, we address R & R's claim that the trial court erred in not awarding prejudgment interest. We have stated that

> the award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest is added the injured party can not be fully compensated for the loss suffered. Interest is not recoverable as *interest* but as additional damages to accomplish full compensation.

*Ind. Ins. Co. v. Sentry Ins. Co.*, 437 N.E.2d 1381, 1391 (Ind.Ct.App.1982). "A prejudgment interest award is justified only where there has been an unreasonable delay in payment of an ascertainable amount. Where a good faith dispute exists concerning a portion of a claim, interest is properly limited to the undisputed (ascertainable) portion of the claim." *NIPSCO v. Stokes*, 595 N.E.2d 275, 279 (Ind.Ct.App.1992) (citation omitted). We evaluate a trial court's determination regarding prejudgment interest under an abuse of discretion standard. *See Johnson v. Eldridge*, 799 N.E.2d 29, 33 (Ind.Ct. App.2003), *trans. denied* (2004). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Id.* We may only con-

---

5.  *Compare* Tr. at 92 (testimony of R & R's Gary Roberts) *with id.* at 425 (testimony of C & N's Craig Armstrong).

6.  Given our resolution of this issue, we need not address the parties' arguments regarding the applicability of the Statute of Frauds.

sider the evidence most favorable to the judgment. *Id.*

The evidence most favorable to the judgment indicates that C & N should have paid R & R $65,044 for the 2002 farm year by December 1, 2002. C & N failed to do so, and R & R filed suit on December 10, 2002. On January 8, 2003, C & N tendered four checks totaling $47,179.86, but R & R did not present the checks for payment.[7] In March 2003, C & N filed several counterclaims against R & R, one of which prevailed at trial. C & N was unable to pay R & R its share of the federal farm subsidy until May 2003 because of R & R's refusal to apply for the subsidy program.

The trial court determined that C & N's "delay in payment was not unreasonable given the various disputes that had arisen between the parties." Appellants' App. at 77 (conclusion 1). "The question of whether there has been an unreasonable delay in payment so as to justify an award of [prejudgment] interest is one of fact." *Clow Corp. v. Ross Twp. Sch. Corp.*, 179 Ind.App. 125, 131–32, 384 N.E.2d 1077, 1083 (1979). Under these circumstances, we cannot say that the trial court abused its discretion in concluding that C & N's delay in payment was not unreasonable.

We therefore affirm the trial court in all respects.

Affirmed.

KIRSCH, C.J., and BAILEY, J., concur.

---

7. The trial court made the following findings regarding the checks:

2. These checks were never presented to the bank for payment.

3. No testimony or evidence was presented from the bank showing that the checks were presented for payment or were denied by the bank due to insufficient funds.

4. There is insufficient evidence to determine if the checks had been presented to the bank they would have been honored by the bank. [Leland Roberts's] son presented hearsay evidence. No check was introduced at trial marked "NSF" and no evidence was introduced from the bank to establish that the checks would not have been honored.

5. [C & N] attempted to make payment with these tendered checks.

6. [R & R] refused to cash these checks thereby continuing to accrue interest.

Appellants' App. at 71–72 (findings 2 through 6). R & R cites *Rosenbaum Brothers v. Nowak Milling Corp.*, 222 Ind. 108, 116, 51 N.E.2d 623, 626 (1943), for the proposition that "[o]ne who tenders money to another, who refuses to accept it, may generally bring it into court and be excused from the payment of interest[.]" In this case, R & R accepted tender of C & N's checks but did not present them for payment. As such, we find *Rosenbaum Brothers* inapposite.