



FILED
Jul 14 2025, 9:45 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Allianz Global Risks US Insurance Company,

*Appellant-Defendant*

v.

Technicolor USA, Inc., et al.,

*Appellee-Plaintiff*

---

July 14, 2025

Court of Appeals Case No.
24A-PL-1522

Appeal from the Marion Commercial Court

The Honorable Heather Welch, Senior Judge

Trial Court Cause No.
49D01-1810-PL-40578

---

**Opinion by Judge DeBoer**
Judges Bailey and Vaidik concur.

**DeBoer, Judge.**

## Case Summary

[1] Much of this case's background involves litigation in Taiwanese courts. Taiwan has a judicial structure like that of the United States, with cases originating at the trial level, such as the Taiwan Taipei District Court (District Court). Appeals from that court are heard by the Taiwan High Court (High Court), which conducts its own trials. Appeals then proceed to the Taiwan Supreme Court.

[2] This case involves several entities, many of which have changed their names multiple times throughout the years. For reference, a chart has been provided below.

| CURRENT NAME | FORMER NAMES | NAME USED IN OPINION |
|---|---|---|
| Technicolor S.A. | Thomson S.A. Septosoixantelec S.A. Thomson Consumer Electronics S.A. Thomson Multimedia S.A. | Technicolor S.A. |
| Thomson Consumer Electronics Bermuda Limited | RCA International Bermuda Limited | TCEB |

| Thomson Consumer Electronics Television Taiwan Limited | RCA Corporation of America Taiwan Limited (RCAT); Thomson Taiwan | TCETVT |
|---|---|---|
| Technicolor USA Inc. | Thomson Inc.<br><br>Thomson Consumer Electronics Inc.<br><br>Thomson Multimedia Inc. | Technicolor USA |

[3]     A large number of former employees of Technicolor's[1] Taiwanese subsidiary, TCETVT, suffered chemical exposure injuries between 1970 and 1992, resulting in two class action lawsuits filed in Taiwan. In the First Class Action, filed in 2004, Taiwanese courts found TCETVT directly liable and its parent companies, TCEB and Technicolor S.A., vicariously liable through a theory of piercing the corporate veil. The trial court barred over 1,000 additional workers from joining the First Class Action, prompting them to file the Second Class Action in 2016. The Second Class Action had the same outcome as the First Class Action and was appealed to the Taiwan Supreme Court. Technicolor

---

[1] The four Technicolor entities are collectively referred to as "Technicolor" throughout this opinion.

USA was not held liable in either action due to its minimal ownership interest in TCETVT.[2]

[4] In 2019, Technicolor moved for summary judgment claiming Allianz, one of its commercial general liability insurers, along with its other insurers, owed it a duty to defend. The Marion Superior Commercial Court (Commercial Court) granted partial summary judgment for Technicolor on the issue of coverage under the Umbrella Policies, ordering Allianz to defend Technicolor and reimburse costs Technicolor incurred defending itself in the Second Class Action.

[5] We reorder and restate Allianz's presented issues into five categories, including:

(1) whether the known loss doctrine and deemer clauses in Allianz's policies precluded coverage and indemnity to Technicolor;

(2) whether Allianz had a duty to defend Technicolor in light of our court's holding in *XL Ins. Am., Inc. v. Technicolor USA, Inc.*, No. 23A-PL-1686, 2024 WL 3272203 (Ind. Ct. App. Jul. 2, 2024), *trans. denied*, that another insurer, XL Insurance America, Inc., also had a duty to defend;

---

[2] Technicolor S.A. is the French parent company of Technicolor USA and TCEB, owning 100% of each of these subsidiaries. *See* Transcript Vol. 2 at 77-78. TCEB owns more than 99.9% of TCETVT. Appellant's Supplemental Appendix Vol. 2 at 166.

(3) whether ordering Allianz to pay fees and costs associated with defending Technicolor S.A. was in error;

(4) whether ordering Allianz to pay prejudgment interest was an abuse of the Commercial Court's discretion; and

(5) whether including Technicolor's arbitration fees with General Electric (GE)[3] and Intersil in the damages award was erroneous, since these entities were not directly related to Technicolor's class action.

We affirm.

## Facts and Procedural History

### The First Class Action

In 2004, approximately 600 former employees of TCETVT filed the First Class Action in the Taiwan District Court alleging serious health issues, including cancer, from exposure to toxic chemicals while working in TCETVT-owned factories and living in on-site dormitories. On April 17, 2015, the District Court found TCETVT, TCEB, and Technicolor S.A. liable in the amount of 7.3

---

[3] GE acquired TCEB in 1986 and then transferred TCEB to Technicolor S.A. in 1989 while the factories at issue in the First and Second Class Actions were operational. At some point around this time, GE sold part of its electronics manufacturing division to numerous entities, including Intersil. *See* Transcript Vol. 2 at 108.

billion Taiwanese dollars.[4]  *See* Appellant's Appendix Vol. 5 at 27-161 for an English translation of the District Court's order.  Technicolor USA was found not liable since it held only four of TCETVT's 153,745 shares.  On appeal, the High Court reached the same result.

[8]  The First Class Action's complaint alleged that TCETVT failed to properly train its employees to safely handle and dispose of chemicals used in the electronics manufacturing process, resulting in contamination of local soil and groundwater and some employees becoming ill.  The employees were exposed to the chemicals through inhalation and dermal contact while performing their duties and drinking contaminated water at their workplaces and on-site dormitories.  *See* Appellant's App. Vol. 5 at 46-47.

**Insurance Litigation for the First Class Action**

[9]  In 2008, Technicolor USA filed a complaint in Marion Superior Court (trial court) seeking defense costs and indemnity from its insurers for the First Class Action.  *See* Appellant's Supplemental Appendix Vol. 2 at 171.  Allianz was not a party to that suit.  The parties included XL Insurance America (XL) and Zurich American Insurance Company, among others.

---

[4] Technicolor's Second Class Action attorney testified that this amount is roughly "230 to 240 million [US Dollars]," depending on the exchange rate.  Tr. Vol. 2 at 166.

[10] In its case with XL, Technicolor prevailed on three summary judgment motions relevant to this appeal:

- In 2010, the trial court ruled that XL had a duty to defend Technicolor in the First Class Action and reimburse Technicolor for defense costs.

- The next year, the trial court held "[t]he bodily injury claims . . . trigger[ed] each of the liability insurance policies . . . from the date [] each plaintiff member allege[d] to have been first exposed to the chemicals through the date of the alleged manifestation of injury[.]" Appellant's App. Vol. 5 at 12. The trial court also granted summary judgment for defense costs against XL.

- In 2013, the court found XL responsible for Technicolor's indemnification, rejecting XL's defenses, including:

  - the "known loss doctrine,"

  - the "Deemer clause" in XL's primary policies, and

  - the coverage territory in XL's primary policies.

*Id.* at 2-24 (emphasis omitted).

[11] XL appealed. *See Thomson Inc. v. Ins. Co.*, et al., 11 N.E.3d 982 (Ind. Ct. App. 2014), *reh'g denied*, *trans. denied*. In *Thomson*, we affirmed the trial court's

rulings on XL's above defenses but reversed, in part, on issues not relevant to this appeal.

[12] As will be explained further, *infra*, Technicolor purchased insurance policies from Allianz effective January 1, 2014.

## The Second Class Action

[13] In January 2016, nine months after the District Court's ruling, 1,000 other potential claimants sought to join the First Class Action, but the District Court barred them from joining. This prompted those 1,147 former employees to file their own suit for damages in May 2016 (the Second Class Action). While the class members' claims were similar to those from the First Class Action, each class had mutually exclusive membership.[5]

[14] The defendants included TCETVT, Technicolor S.A., TCEB, Technicolor USA, and GE.[6] Plaintiffs sought to hold TCETVT directly liable for injuries sustained from exposure to toxic chemicals and Technicolor S.A., TCEB, and Technicolor USA vicariously liable as "holding companies" of TCETVT under corporate veil-piercing theories. Appellant's Supp. App. Vol. 2 at 176.

---

[5] The similarities between the class actions include: (1) the association representing the claimants; (2) the toxic chemicals; and (3) the alleged injuries. *See* Tr. Vol. 3 at 45-46.

[6] After the High Court found Technicolor USA not liable in the First Class Action, the plaintiffs withdrew their complaint against Technicolor USA in 2018.

[15]     The District Court reached the same conclusion in 2019 as it did in the First Class Action, finding TCETVT directly liable and TCEB and Technicolor S.A. jointly and severally liable by "piercing the corporate veil," and entering judgment against those entities for approximately 2.3 billion Taiwanese dollars. Appellant's App. Vol. 7 at 12-13. The High Court affirmed the District Court's order in April 2022, and the case is now on appeal to the Taiwan Supreme Court. *See* Transcript Vol. 2 at 203.

## Insurance Litigation for the Second Class Action

[16]     On May 31, 2016, Technicolor notified its insurers, including Allianz, of the filing of the Second Class Action. Technicolor filed a lawsuit in the Commercial Court against its insurers in 2018 seeking defense costs and indemnity for the Second Class Action.

[17]     At issue here are six insurance policies Allianz issued to Technicolor, including three commercial general liability (CGL) primary policies (Primary Policies) and three umbrella policies (Umbrella Policies). The Primary Policies include:

- Policy No. CGL 2004821 effective from January 1, 2014 until January 1, 2015. *See* Appellant's Supp. App. Vol. 3 at 90-173.

- Policy No. CGL 2005479 effective from January 1, 2015 until January 1, 2016. *See* Appellant's Supp. App. Vol. 4 at 2-94.

- Policy No. CGL 2006459 effective from January 1, 2016 until January 1, 2017. *See id.* at 95-194.

[18] The three Umbrella Policies include:

- Policy No. ULA 2004822 effective from January 1, 2014 until January 1, 2015. *See* Appellant's Supp. App. Vol. 5 at 2-62.

- Policy No. ULA 2005480 effective from January 1, 2015 until January 1, 2016. *See id.* at 63-134.

- Policy No. ULA 2006460 effective from January 1, 2016 until January 1, 2017. *See id.* at 135-200.

[19] This appeal involves four orders entered by the Commercial Court. We set out the rulings at issue here by date of the ruling:

- **July 19, 2021** (order on Technicolor's motion for partial summary judgment). *See* Appellant's Supp. App. Vol. 2 at 161-246. The Commercial Court found:
  - "There are genuine issues of material fact as to whether Technicolor has failed to demonstrate exhaustion of all applicable [self-insured retentions], and whether Technicolor possesses any other underlying insurance that would preclude coverage under the [Umbrella Policies]"—such as by XL—leaving open whether the Umbrella Policies would provide coverage. *Id.* at 245-46.

- o Allianz's arguments that the known loss and known injury exclusions barred coverage under the Umbrella Policies were unpersuasive, and Technicolor timely provided notice of its claims.

- **June 10, 2022** (order on Technicolor's motion for partial summary judgment). *Id.* at 146-160. The Commercial Court found:

  - o Allianz owed a duty to defend Technicolor because there was no underlying insurance that triggered coverage for Technicolor. The court deferred ruling on Allianz's reimbursement to Technicolor until other insurers' liabilities were determined. *See id.* at 137.

- **June 20, 2023** (order granting defense costs). *Id.* at 120-137. The Commercial Court found:

  - o Allianz was liable for $163,327.50 in defense costs (before Technicolor USA's dismissal from the Second Class Action) plus prejudgment interest, and it was jointly and severally liable with XL for $142,564.50 of those defense costs plus prejudgment interest. *See id.* at 160.

- **January 19, 2024** (order determining defense costs). *Id.* at 103-119. The Commercial Court found:

- Allianz was liable for $5,106,544.40 in defense costs (after Technicolor USA's dismissal from the Second Class Action) plus $962,106.57 in prejudgment interest through June 15, 2023, with prejudgment interest increasing at $1,155.34 per day thereafter. *Id.* at 118. This judgment included the costs of Technicolor's arbitrations.

[20] In May 2024, the Commercial Court denied Allianz's motion to reconsider. *See id.* at 100. This appeal ensued.

## Discussion and Decision

[21] Allianz appeals the Commercial Court's granting of summary judgment in Technicolor's favor on the issue of coverage for the Second Class Action and its orders awarding and determining defense costs owed to Technicolor. When reviewing a grant of a motion for summary judgment, we "stand in the shoes of the trial court." *Burton v. Benner*, 140 N.E.3d 848, 851 (Ind. 2020) (quoting *Murray v. Indianapolis Pub. Schs.*, 128 N.E.3d 450, 452 (Ind. 2019)). "Summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 955–56 (Ind. 2018) (quoting Ind. Trial Rule 56(C)). "We will draw all reasonable inferences in favor of the non-moving party." *Arrendale v. Am. Imaging & MRI, LLC*, 183 N.E.3d 1064, 1068 (Ind. 2022). "We review summary judgment de novo." *Id.*

## 1a. Known Loss Doctrine

Allianz argues that it had no duty to defend Technicolor in the Second Class Action because the known loss doctrine and the policies' deemer clauses barred coverage. Simply stated, Allianz argues that when Technicolor obtained insurance through Allianz in 2014, it had been embroiled in litigation in the First Class Action for claims similar to those later asserted in the Second Class Action, and because of this knowledge, coverage should be barred. Allianz supports its position by claiming the common-law known loss doctrine applies and the policy language— specifically the deemer clause—bars coverage.

Beginning with the known loss doctrine, we agree with Allianz that "[o]ne may not obtain insurance coverage for a loss that has already taken place." Appellant's Brief at 19 (citing *Indiana Ins. Co. v. Kopetsky*, 14 N.E.3d 850, 852 (Ind. Ct. App. 2014), *modifying* 11 N.E.3d 508). A derivative of this basic tenet of insurance law is the known loss doctrine, which bars coverage "if an insured has actual knowledge that a loss has occurred, is occurring, or is substantially certain to occur on or before the effective date of the policy[.]" *Thomson Inc. v. Ins. Co. of N. Am., et al.*, 11 N.E.3d 982, 998 (Ind. Ct. App. 2014) (quoting *Gen. Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 414 (Ind. Ct. App. 2000)), *reh'g denied*, *trans. denied*.

In *Thomson*, a different insurer, XL, raised an argument similar to that raised by Allianz. There, XL used the known loss doctrine to argue that the Technicolor entities knew of environmental contamination and allegations of bodily injury

claims as early as 1989 when the contamination was discovered. Since this was eleven years before the first XL policy's inception, XL argued coverage was precluded. The *Thomson* panel disagreed: the loss there was "liability for bodily injury to the plant employees, not bodily injury per se or environmental contamination." *Id.* at 999. In support, *Thomson* cited *Gen. Housewares Corp.*, which instructed, "we look to see if the insured knew of a liability, rather than when property damage is known." 741 N.E.2d at 416. The *Thomson* panel concluded that the Technicolor entities had no knowledge of liability, thus the known loss doctrine did not bar coverage.

[25] Here, the key question for our analysis is *when* Technicolor knew that it had *liability* for bodily injury related to the Second Class Action. Allianz claims that Technicolor had knowledge of liability for the Second Class Action in 2014 because the First Class Action was already a decade old by then. But Technicolor is not seeking insurance from Allianz for the First Class Action. The Second Class Action involved a different set of claimants, unknown to Technicolor until the First Class Action's class membership closed in 2016.

[26] The known loss doctrine bars coverage when a loss is substantially certain to occur. But substantial certainty applies to a loss "not only likely to occur, but is virtually inevitable." *Gen. Housewares Corp.*, 741 N.E.2d at 414. Applied to the Second Class Action, no substantial certainty existed because the second lawsuit had not been filed yet. The burden of proving a known loss is on the party seeking to avoid coverage. *Id.* Allianz has not demonstrated that

Technicolor had pre-policy knowledge that the First Class Action would close and a new lawsuit would form. Thus, we conclude that the known loss doctrine does not preclude coverage for Technicolor.

## 1b. Deemer Clauses

In addition to raising the known loss doctrine as a basis for defeating coverage, Allianz directs our attention to provisions in the policies referred to as 'deemer' clauses. Insurance policy interpretation is a question of law for the court. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). Resultingly, summary judgment on insurance policy interpretation is "particularly appropriate." *Am. Fam. Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 784 (Ind. Ct. App. 2002), *reh'g denied, trans. denied*. If policy language is clear and unambiguous, the court will give it its plain and ordinary meaning. *Tate,* 587 N.E.2d at 668. But any ambiguities in the policy language are to be construed in favor of the insured party. *Am. Fam. Mut. Ins. Co.*, 764 N.E.2d at 784 (citing *Meridian Mut. Ins. Co. v. Auto-Owners Ins. Co.*, 698 N.E.2d 770, 773 (Ind. 1998)). And any policy exclusions must clearly and unmistakably "bring within its scope the particular act or omission that will bring the exclusion into play." *PSI Energy, Inc. v. Home Ins. Co.* 801 N.E.2d 705, 723 (Ind. Ct. App. 2004) (quoting *Am. Fam. Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998), *trans. denied.*), *trans. denied*.

The parties agree that the Allianz Umbrella Policies deal with classes of losses, one dealing with "bodily injury" and "property damage," and another with

"personal injury" or "advertising injury." The bodily injury provision which contains the deemer clause limits bodily injury coverage to those injuries not known to Technicolor at the time of the policy's inception:

> B. This policy applies to "bodily injury" and "property damage" only if:
>
>  \*\*\*
>
>> (3) Prior to the "policy period", no "insured" . . . and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that **the "bodily injury"** or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the "policy period[,]" that the "bodily injury" or "property damage" occurred; then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period[.]"
>
> E. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" . . . or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
>> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>>
>> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Appellant's Supp. App. Vol. 5 at 9-10, 70-71, 142-143 (emphasis added). Stated differently, if Technicolor knew of the bodily injury or property damage for which it sought coverage, coverage would be precluded. Technicolor would be deemed to have had knowledge at the time it reported bodily injury, received a demand, or just became aware of the injury or damage. Technicolor received a claim for damages when the Second Class Action was filed in 2016, after the Allianz Umbrella Policies were in effect. But the deemer clause could still bar coverage if Technicolor reported the bodily injury or the property damage to any insurer before the policies commenced on January 1, 2014, or if Technicolor became aware of it before the policies commenced.

[29] The Umbrella Policies also address personal injury and advertising injury but do not exclude covered injuries which were deemed to be known by Technicolor:

> C. This policy applies to "personal injury" or "advertising injury" only if:
>
> > (1) The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and
> >
> > (2) The "personal injury" or "advertising injury" is committed during the policy period and takes place anywhere in the world.

*Id.* at 9, 70, 142.

[30] The Umbrella Policies define "personal injury" as:

> P. "Personal injury" means injury, other than "advertising injury" or "bodily injury," arising out of one or more of the following offenses:[7]
>
> \*\*\*
>
> > (3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor[.]
>
> \*\*\*

*Id.* at 16, 77, 149.

[31] The Commercial Court found that the limitations on coverage for bodily injury contained in section (B)(3) of the Umbrella Policies did not apply to section (C)(1) –(C)(2) and consequently (P)(3) for personal injury. *See* Appellant's Supp. App. Vol. 2 at 231. Because the deemer clause only references bodily injury and property damage, and there is no corresponding language limiting coverage related to personal injury, the trial court found that there is coverage

---

[7] There are four enumerated offenses in the policy; however, the offense in subsection (3) is the only offense relevant to this appeal.

for personal injury regardless of when those injuries would be deemed to have been known.

[32] Technicolor claims that Allianz conceded any challenge to the Commercial Court's ruling that section (C)(1) - (C)(2) coverage applied because it failed to raise it in its initial brief. *See* Appellee's Br. at 27. We agree. The first time Allianz challenges the court's ruling is in its reply brief. Our Appellate Rules are clear on this issue: "[n]o new issues shall be raised in the reply brief." Ind. Appellate Rule 46(C). Doing so results in the issue being waived. *Akin v. Simons*, 180 N.E.3d 366, 375 (Ind. Ct. App. 2021) (citing *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005)). Thus, this issue is waived for our review.

[33] Nonetheless, we address whether section (B)(3) of the Umbrella Policy provides Technicolor with another avenue by which it may seek coverage. Allianz argues that before purchasing insurance from them in 2014, Technicolor had spent years—and millions of dollars—defending claims of bodily injury in the First Class Action. It accuses Technicolor of failing to provide "open, honest and **complete** disclosure of material information." Appellant's Br. at 28 (emphasis in original). Tellingly, Allianz made no claim in its complaint that Technicolor fraudulently misrepresented facts to Allianz before the inception of the policy. Nor does Allianz claim that Technicolor is precluded from recovering under the terms of the policy for not disclosing material information. Although the Second Class Action involves different claimants, the class

participants suffered the same types of injuries resulting from exposure to the same contaminants. Thus, Allianz argues, Technicolor's knowledge of bodily injury to the claimants of the Second Class Action should be deemed to have occurred as early as 2004 when the First Class Action was filed since, at that point, it knew there were claims by workers from the various Technicolor factories involved.

[34] To answer when Technicolor was deemed to have known of the bodily injury to the members of the Second Class, we must decide the significance of (B)(3) of the insurance contract. Not surprisingly, Allianz and Technicolor characterize the (B)(3) language differently. Allianz argues that because the language appears in the coverage clause, it is part of the insuring agreement and does not operate as an exclusion to coverage. Technicolor argues that because the section acts to exclude coverage, it should be treated as an exclusion. This distinction is important because the insured bears the initial burden of establishing that a claim is within the policy's insuring provisions. *See Scottsdale Ins. Co. v. Harsco Corp.*, 199 N.E.3d 1210, 1219 (Ind. Ct. App. 2022), *trans. denied*. "Only once that burden is met does the burden shift to the insurer to demonstrate that policy exclusions nonetheless preclude coverage." *Id.*

[35] We agree with Technicolor that (B)(3) is exclusionary. The Umbrella Policies contain language not unlike that used across the insurance industry. Our Supreme Court has explained how a CGL policy operates:

> Most CGL policies are written on standardized forms developed by an association of domestic property insurers known as the Insurance Services Office ("ISO"). These policies begin with a broad grant of coverage, which is then limited in scope by exclusions. Exceptions to exclusions narrow the scope of the exclusion and, as a consequence, add back coverage.

*Sheehan Constr. Co. v. Continental Cas. Co.*, 935 N.E.2d 160, 162 (Ind. 2010) (internal citations and quotations omitted). Our Court addressed a similar matter in *Kopetsky*, 14 N.E.3d at 852-53, a case involving bodily injury language identical to that found in Allianz's Umbrella Policies.[8] Because the language's effect is to exclude coverage under certain circumstances, we referred to it as an exclusion, as other courts have done. *See Quanta Indem. Co. v. Davis Homes, LLC*, 606 F.Supp.2d 941, 947 (S.D. Ind. 2009).

[36] "[A] coverage exclusion is an affirmative defense, proof of which is an insurer's burden." *PSI Energy, Inc.*, 801 N.E.2d at 725 (quoting *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*). An exclusion "must be plainly expressed in the policy," and the exclusion "must bring within its scope the particular act or omission that will

---

[8] Allianz does not contest the Commercial Court's finding that the injuries and illnesses suffered by the Second Class Action's claimants amounted to "bodily injury" under the policy. Thus, Allianz concedes that coverage is provided by the policy, subject to any exclusions.

bring the exclusion into play." *Hoosier Ins. Co.*, 745 N.E.2d at 309. "Any doubts as to the coverage . . . will be construed against the insurer[.]" *Id.*

[37] We find *Westfield Ins. Co. v. Sheehan Const. Co, Inc.* particularly instructive to our review given its factual similarities to this case. 580 F.Supp.2d 701 (S.D. Ind. 2008). *Westfield* dealt with policy language similar, but not identical, to that of the Umbrella Policies.[9] The Southern District found that this language barred coverage but only as applied to the one class member who had notified Sheehan of possible claims before the policy took effect. *Id.* at 716. Westfield Insurance had not argued that Sheehan had knowledge of any other specific class members' claims, so only that one claim was barred from coverage. *Id.* at 716 n.9. In *Westfield*, the insurer had to prove the insured's knowledge of potential claims. While the insurer was able to do so for one claim, the insured's knowledge of one class member's potential claims did not automatically impute knowledge of the entire class's similar claims.

---

[9] The relevant policy language in *Westfield* stated:

> This insurance applies to "bodily injury" and "property damage" only if: . . . no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*Id.* at 706.

[38] We find *Westfield's* analysis applicable here. Allianz demonstrated that Technicolor possessed general knowledge of potential claims stemming from environmental contamination by pointing out that Technicolor had been defending itself against similar claims for over a decade. Yet Allianz was unable to link knowledge of these claims to any one member of the Second Class Action. At the time of the policies' inception, the formation of a second class was not foreseeable because those claimants were potentially still able to join the First Class Action. And Technicolor is not seeking coverage for those claims here. Instead, Technicolor seeks coverage and indemnity for a *separate* group of claimants in a different lawsuit. Allianz provides no evidence that Technicolor was aware of any injuries suffered by any specific member of the Second Class Action before January 1, 2014.

[39] As with all adhesion contracts, Allianz was free to draft its exclusionary language as it saw fit. Allianz could have drafted its exclusionary language to exclude a broader class of claims. It did not. We find nothing in the Umbrella Policies excluding coverage for the Second Class Action's claims.

## 2.   XL's Duty to Defend

[40] Finding that policy exclusions did not bar coverage, we now turn to Allianz's argument that its duty to defend Technicolor is only triggered under its Umbrella Policies if no other primary insurer has such a duty to defend them. *See* Appellant's Br. at 32; *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 2007 WL 1021825, at *12 (S.D. Ind. 2007) ("[W]here an insured has both primary and

excess insurance, an excess insurer has no duty to defend the insured until all primary policies have been exhausted").

[41] Allianz's argument is premised on our Court's ruling in *XL Ins. Am., Inc.*, 2024 WL 3272203, in which a panel of our Court found that Technicolor USA, TCETVT, and Technicolor S.A. were insured under XL's primary and umbrella policies. Allianz contends that its Umbrella Policies are not triggered because Technicolor has not demonstrated that it has exhausted all other primary insurance coverage. According to Allianz, its Umbrella Policies provide "true-excess" coverage which is not available until the primary coverage has been exhausted. *See* Appellant's Br. at 32; *see also Berry Plastics Corp. v. Ill. Nat'l Ins. Co.,* 244 F.Supp.3d 839, 851 (S.D. Ind. 2017) ("As a general rule, a true-excess insurer is not obligated to defend its insured until all primary insurance is exhausted or the primary insurer has tendered its policy limits . . . . [T]he true[-]excess insurers' defense obligations are contingent upon the excess policy's terms and conditions") (internal citations omitted), *affirmed by* 903 F.3d 630.

[42] "[A] true[-]excess insurance policy is secondary in priority to a primary insurance policy[.]" *Loomis v. ACE Am. Ins. Co.*, 244 N.E.3d 908, 917 (Ind. 2024) (quoting *Monroe Guar. Ins. Co. v. Langreck,* 816 N.E.2d 485, 492 (Ind. Ct. App. 2004)). An umbrella policy, on the other hand, is designed to provide excess or primary insurance to fill coverage gaps. *See Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 567 (7th Cir. 1997).

[43]    We agree with Allianz that a true-excess policy does not generally kick in until primary coverage is exhausted, but we disagree that Allianz's Umbrella Policies are true-excess policies. The Umbrella Policies provide coverage for bodily injury and personal injury, among other injury and damage, under two clauses:

A. Duty to Defend

1. We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury[,]" "property damage[,]" "personal injury" or "advertising injury" to which this insurance applies even if the "suit" is groundless, false, or fraudulent:

    a. When all applicable limits of "scheduled underlying insurance" have been exhausted by payment of damages to which this insurance applies; **or**

    b. When damages sought for "bodily injury[,]" "property damage[,]" "personal injury" or "advertising injury" are covered by this policy but are not covered by any "scheduled underlying insurance."

Appellant's Supp. App. Vol. 5 at 10, 71, and 143 (emphasis added). Section (A)(1) is written in the disjunctive. While (A)(1)(a) requires exhaustion by payment of other insurance policies, (A)(1)(b) does not. (A)(1)(b) states that Allianz has a duty to defend bodily injury claims that are covered by the policy "but are not covered by any "scheduled underlying insurance.""

[44] No scheduled underlying insurance is available for these claims. All three Umbrella policies designate underlying insurance as "an insurance policy or self-insured retentions listed in the Schedule of Underlying Insurance forming a part of this policy, including any renewals or replacements thereof." *Id.* at 17, 78, 150. Each of the Umbrella Policies contain an identical schedule of underlying insurance. *See id.* at 29-30, 90-91, 162-163. None of the schedules of underlying insurance lists XL or any other CGL policy. Pursuant to the plain language of section (A)(1)(b) coverage can be triggered regardless of the exhaustion of any other policy.

[45] As explained above, "the clear and unambiguous language of an insurance policy must be given its plain and ordinary meaning." *Stroh Brewing Co.*, 127 F.3d at 567. Allianz could have written its policy to provide umbrella insurance only when all primary insurance for similar claims has been exhausted, but it did not. We find XL's duty to defend has no bearing on Allianz's duty to defend and indemnify.

### 3. Duty to Defend Technicolor, S.A.

[46] In its July 19, 2021 order, the Commercial Court held, "Allianz did not insure Technicolor S.A. with regard to the Second Class Action as the controlling interest endorsement in the Allianz Policies is not applicable, and therefore, Allianz owes no duty to defend or indemnify Technicolor S.A. with regard to the Second Class Action." Appellant's Supp. App. Vol. 2 at 245. However, the Commercial Court then ruled in its January 19, 2024 order that the "nature of

defending against the Second Class Action means that costs allocate[d] to Technicolor S.A. are still part of the 'full defense' which Allianz owes a duty to pay to TCEB and TCETVT." *Id.* at 112. The Commercial Court's reasoning was explained in its June 20, 2023 order:

> [T]he Technicolor entities are not separate going concerns; TCETVT, TCEB, and Technicolor USA only exist to carry out this lawsuit. They do not operate any other day-to-day activities. Their parent company, Technicolor SA, also remains in operation but is not continuing the business operations as had been done previously in Taiwan. Second, the Association collectively sued all of the Technicolor entities for claims arising out [of] the same set of facts. So, while the entities are distinct and remain in privity with their specific insureds in this case, their positions in the Second Class Action are largely the same whether they are either defending as the tortfeasor which committed the alleged harm, TCETVT, or one of the parties being sued derivatively, TCEB, Technicolor USA, or Technicolor SA. Based in part on the novel circumstances of litigating a mass toxic tort case in Taiwan, providing a "full defense" on behalf of any one of the insured Technicolor entities would require providing some kind of defense that furthers the interests of any non-insured co-defendants as well. Because the "full defense" in this instance cannot call for any additional parsing of fees among codefendants based on guiding appellate law and the unique circumstances of the case, an[] insurer responsible for defending any of the insureds in the Second Class Action is liable for full defense costs.

*Id.* at 128-29. Allianz argues this finding is not compatible with the Commercial Court's 2021 order that found Allianz has no duty to indemnify or defend Technicolor S.A. Technicolor disagrees, arguing that defense of one

Technicolor entity is "inextricably bound" with defense of other Technicolor entities. Appellee's Br. at 47. Technicolor also argues that a second basis exists for coverage; specifically, that Technicolor S.A. is insured under the Umbrella Policies since the controlling interest endorsement is not found in those policies.

[47] Both sides agree that the Commercial Court's ruling applies to the Primary Policies; in other words, Technicolor S.A. is not insured under the Primary Policies. But the parties disagree as to whether Technicolor S.A. is insured under the Umbrella Policies, and, if not, whether defense of Technicolor S.A. is necessary to provide a full defense of the other Technicolor entities.

[48] Because Allianz Umbrella Policies' language includes a broad definition of "insured," we agree with Technicolor that Technicolor S.A. is insured even though it is not a named insured under the Umbrella Policies. In addition to the named insured, the Umbrella Policies define an "insured" as ". . . [y]our stockholders . . . but only with respect to their liability as stockholders." Appellant's Supp. App. Vol. 5 at 13, 74, 146. The named insureds here include Technicolor USA and TCEB. *See id.* at 56, 126, and 193. Thus, under a plain reading of the policies' language, Technicolor USA and TCEB's stockholders are insured to the extent of their liability as stockholders.

[49] Because Technicolor S.A. holds stock in its wholly-owned subsidiaries, TCEB and Technicolor USA, Technicolor S.A. is insured under the Umbrella Policies with respect to its liability as a stockholder of the two companies. Allianz

argues Technicolor S.A. is not insured because Technicolor USA was not found liable in the Second Class Action and Technicolor's fee expert found that the work documented in fee invoices for the Second Class Action "referencing [Technicolor S.A.] and [TCEB] [did] not appear to benefit Technicolor USA, Inc. directly." Exhibits Vol. 1 at 12.[10] This is in contrast to *Thomson* where our Court found that the same fee expert "opined that the defense actions here were all reasonable and necessary to protect all the Thomson entities." *Thomson*, 11 N.E.3d at 1027. Allianz seizes on this difference to argue that Technicolor S.A. is not an insured, and thus, Allianz should not have to pay for work that did not benefit one of its named insureds. But Technicolor S.A. **is** an insured, at least to the extent of its liability as a stockholder of Technicolor USA and TCEB. TCEB was found liable by the Taiwanese courts. And the fee expert opined that a "substantial part of the work performed by [Technicolor's attorneys] benefitted all of the [Technicolor] defendants," including Technicolor S.A. Ex. Vol. 1 at 11.

[50] In Taiwan, Technicolor S.A. was held liable by its District Court as a stockholder of TCEB. The District Court found that after January 1, 1989, through TCEB, Technicolor S.A. held more than 99% of TCETVT's shares. *See* Appellant's App. Vol. 7 at 140. TCETVT operated the factories at issue in

---

[10] The *Thomson* panel addressed the same fee expert's credentials and found him to be an experienced lawyer "who has defended toxic tort, class action cases in foreign countries which like Taiwan do not have developed Western-style legal systems." *Thomson*, 11 N.E.3d at 1024.

the Second Class Action. But because the District Court found that TCETVT is "only an alter ego" of Technicolor S.A., it found the two entities jointly and severally liable because Technicolor S.A.'s subsidiary, TCEB, controlled TCETVT. *See id.* at 141-143. The Taiwanese courts also found that under Taiwanese law:

> the controlling shareholders of the company have the actual controlling power over the management of the company. If a controlling shareholder abuses the legal personality in its own interests, but on the other hand raises the banner of limited liability of the shareholder, causing damage to the creditors of the company, then such independent legal personality of the company merely serves as means for the shareholder to avoid legal liabilities.

*Id.* at 134-135. Technicolor S.A. itself did not own and operate the Taiwanese factories, but its subsidiary TCETVT did. The Taiwanese courts found that this connection created liability for TCEB and, by extension, Technicolor S.A. While Technicolor S.A. was not a named insured under the Umbrella Policies, it was covered under the policy since its only liability in the Second Class Action arose out of its holding of TCEB's stocks.

[51] Turning to the argument regarding a full defense, Technicolor argues that defending a subsidiary necessitates defending the parent company. Technicolor references *Thomson*, which states that a "full defense" includes a defense "against the merits of the underlying claims." *Thomson*, 11 N.E.3d at 1027. For example, the *Thomson* panel held that XL had to pay reasonable and

necessary defense costs incurred by TCETVT to provide a full defense to the named insured, Technicolor USA, given the same veil-piercing allegations from the First Class Action that also existed in the second. *Id.* at 1026. There, Technicolor's expert testified that actions undertaken in defense of TCETVT in the First Class Action were all reasonable and necessary to protect Technicolor USA. *Id.* at 1027.

[52] Allianz counters that Technicolor's expert in this case testified that the fees and costs incurred on behalf of Technicolor S.A. did not benefit all Technicolor entities. Ex. Vol. I at 12. It also argues that the full defense argument fails because the *Thomson* panel only dealt with entities that were named insureds, and that TCETVT was entitled to a defense in its own right in *Thomson* because it qualified as an insured under the XL policies. *See* Appellant's Reply Br. at 18. But so too does Technicolor S.A., as the stockholders are exposed to liability if TCEB is found liable. Thus, Technicolor S.A. is entitled to a defense from Allianz.

## 4.    Prejudgment Interest

[53] The Commercial Court found Allianz liable for prejudgment interest on unreimbursed attorney's fees Technicolor owed its attorneys for its defense in the Second Class Action. *See* Appellant's Supp. App. Vol. 2 at 117. It ordered

prejudgment interest at the rate of 8% per year[11] on defense cost invoices, starting 60 days from the invoice date.

[54] Indiana Code section 34-51-4-7 states, "[t]he court may award prejudgment interest as part of a judgment."  The standard of review of an award of prejudgment interest is an abuse of discretion, "focusing on the trial court's threshold determination of whether the facts satisfy the test for prejudgment interest."  *Harlan Sprague Dawley, Inc. v. S.E. Lab Grp. Inc.*, 644 N.E.2d 615, 617 (Ind. Ct. App. 1994), *reh'g denied*, *trans. denied*.  "Prejudgment interest is justified where there has been an unreasonable delay in the payment of an amount ascertainable in accordance with fixed rules of evidence and accepted standards of valuation."  *Id.*

[55] Allianz argues that the Commercial Court abused its discretion in awarding prejudgment interest.  It asserts Technicolor is not entitled to prejudgment interest because such interest should be calculated from the date Technicolor paid its attorneys' invoices and Technicolor failed to introduce evidence of its dates of payment.  *See* Appellant's Br. at 41.  Allianz cites numerous authorities to support its position that "proof of payment is the crucial date."  *Id.* at 40; *see*

---

[11] Indiana Code section 24-4.6-1-102 states, "[w]hen the parties do not agree on the rate, interest on loans or forbearances of money, goods or things in action shall be at the rate of eight percent (8%) per annum until payment of judgment."  The Commercial Court started the calculation of prejudgment interest when it did because Technicolor was required to pay the attorney fees incurred in the Second Class Action sixty days from the date of the invoice.  *See* Tr. Vol. 2 at 80.

*also Hizer v. Gen. Motors Corp., Allison Gas Turbine Div.*, 888 F. Supp. 1453, 1464 (S.D. Ind. 1995) ("The central governing principle [] is that interest—whether prejudgment or interest on delayed payment—begins to run from the time payment is due under the governing contract"). Without proof of payment, Allianz argues, there is no method by which to calculate prejudgment interest. But the cases Allianz cites cut against their argument. For example, in *Fed. Ins. Co.* v. *Stroh Brewing Co.*, the Northern District of Indiana found that prejudgment interest should begin accruing on the date on which the insured's claim should have been paid by the insurer. 35 F.Supp.2d 650, 663 (N.D. Ind. 1998). The Southern District of Indiana similarly found that prejudgment interest accrues "from the time payment is due[.]" *See Hizer*, 888 F.Supp. at 1464; *see also Bd. of Works of the City of Lake Station, et al. v. I.A.E., Inc.*, 956 N.E.2d 86, 95-96 (Ind. Ct. App. 2011) ("[prejudgment interest] is computed from the time the principal amount was demanded or due[.]"), *reh'g denied*, *trans. denied*. Thus, the Commercial Court properly ordered prejudgment interest from the date defense costs were due rather than the actual date of payment.

[56]     Allianz argues a second point: prejudgment interest should not only be calculated from the date of payment, but the amount must be ascertainable as of a particular time. When determining if prejudgment interest should be awarded, Allianz would prefer courts use the test applied in *Washington Cnty. Mem'l Hosp. v. Hattabaugh*: "whether the injury and consequent damages are

complete and . . . ascertain[able] as of a particular time[.]" 717 N.E.2d 929, 933 (Ind. Ct. App. 1999) (quoting *Harlan Sprague Dawley, Inc.*, 644 N.E.2d at 617). According to Allianz, because Technicolor did not introduce evidence of when payment was made, its damages were not ascertainable at a particular time. In *Thomson*, we touched on this issue and relied upon our holding in *Bopp v. Brames*, 713 N.E.2d 866 (Ind. Ct. App. 1999), *trans. denied*, that "[a]n award of prejudgment interest is proper only where a simple mathematical computation is required. Damages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest." *Id.* at 872 (internal citations omitted). Here, only simple addition is required to determine the amount of damages; namely, the summation of Technicolor's invoices from its attorneys. There is no dispute as to the methodology or formulation for the calculation of damages nor does Allianz raise any issue with any specific invoice, only disputing that coverage exists in the first place. Thus, Allianz has not demonstrated that an award of prejudgment interest was improper.

[57] Finally, Allianz argues that the reasonableness of the attorneys' fees at issue has never been determined. Allianz contends that since the Commercial Court denied Technicolor's motion for summary judgment on coverage in its July 19, 2021 order, these damages are subject to a good faith dispute which, as we found in *Bopp*, cannot allow for an award of prejudgment interest. *Id.* As a result, it argues that an award of prejudgment interest on the attorneys' fees must be reversed as a matter of law.

[58] After an evidentiary hearing, the Commercial Court ordered Allianz to pay Technicolor $5,106,544.40 in defense costs from early 2018 through April 2023 and $962,106.57 in prejudgment interest. *See* Appellant's Supp. App. Vol. 2 at 118. The Commercial Court rejected Allianz's arguments that defense costs were not ascertainable, finding that they were easily calculable based on Technicolor's invoices.[12]

[59] In *Thomson*, a panel of our Court addressed a similar argument by XL. There, XL argued that Technicolor's (then Thomson's) damages were not reasonable and necessary because multiple issues of fact existed which required resolution by a trier of fact. The *Thomson* panel, relying on Seventh Circuit precedent, found that Thomson's attorneys' fees were presumed to be reasonable and necessary, which XL did not rebut, given the circumstances in that case:

> Thomson cites numerous cases, many from the Seventh Circuit but also from other courts coast to coast, that hold that when an insurer has breached the duty to defend, and the policyholder has secured, supervised, and paid for a defense without any expectation of payment, those costs are "market tested" and are presumed to be "reasonable and necessary."

*Thomson*, 11 N.E.3d at 1023-24 (internal citations and quotations omitted). We find that the same set of circumstances exists in this case. Allianz breached its

---

[12] The Commercial Court also found that "'[a]scertainable' and 'calculable' relates to the arithmetic involved in determining of the sum of the damage's figures, not the party's liability." Appellant's App. Vol. 2 at 117.

duty to defend, leaving Technicolor to pay the fees and costs on its own. Technicolor's fee expert testified that the fees charged by Technicolor's lawyers were reasonable and necessary. Tr. Vol. 2 at 103. The Commercial Court agreed and calculated the defense costs owed by Allianz. And Allianz presents no argument to rebut the presumption that the costs are reasonable and necessary. Without such an argument, there is no genuine issue of material fact. *See Thomson*, 11 N.E.3d at 1033 ("As we determined above, the trial court properly concluded that Thomson's defense costs were presumed to be reasonable and necessary and that [XL's fee expert]'s affidavit did not rebut that presumption; in other words, the affidavit did not create a genuine issue of material fact."). Thus, Allianz cannot shirk liability by arguing that Technicolor's fees and costs were subject to a good faith dispute as to their reasonableness. Nor can Allianz avoid the imposition of prejudgment interest on Technicolor's fees and costs. Finding no abuse of discretion, we affirm the Commercial Court's award of $962,106.57 in prejudgment interest.

## 5. Arbitrations

[60]     In seeking to recoup defense costs and indemnity for the First and Second Class Actions, Technicolor participated in two arbitrations, resulting in over $100,000 in attorneys' fees. One was with GE in the International Chamber of Commerce in the Netherlands, and the other was with Intersil in the American Arbitration Association in Chicago. Both arbitrations have been "stayed" so Technicolor could "see how things play out in Taiwan first[.]" Tr. Vol. 2 at

107.[13]  The arbitrations were filed in 2013 to recover losses under the First Class Action, but the requests for arbitration were amended in 2021 to include the Second Class Action.

[61]   The Commercial Court ruled Allianz owes Technicolor indemnification for its arbitration costs, stating:

> As for the defense payments owed related to the global arbitration proceedings challenged by Allianz, the Court finds that Allianz is obligated to pay them as well.  Providing a defense in the global settlement arbitration is part of the "total defense" owed to Technicolor because that arbitration still involves the Second Class Action for which Technicolor may seek a defense under the Allianz policies even if the arbitration includes other matters as well.  As stated in the June 2023 Order, the insurers can address the appropriate apportionment of defense funds expended once Technicolor has been paid the appropriate sums associated with its defense.

Appellant's Supp. App. Vol. 2 at 116.

[62]   Allianz argues that these arbitrations are offensive—rather than defensive—in nature with Technicolor prosecuting the action against unrelated entities (GE and Intersil) for claims falling outside of the Second Class Action.  Allianz

---

[13] GE is involved because it sold its consumer electronics division and semiconductor operations to Technicolor and Intersil, respectively, in the 1980s.  Although it has since been sold to another entity, Technicolor believes it preserved its rights against Intersil under an asset purchase agreement. *See* Tr. Vol. 2 at 108.

points out that these arbitrations occurred long before the effective date of the Allianz policies, and that the arbitrated issues also encompassed the First Class Action litigation and involved remediation projects and claims far beyond the scope of the Second Class Action. For example, Technicolor's attorney told the Commercial Court, "we were going after GE for a bunch of [projects] not just Taiwan[,]" including projects in Marion, Indiana and Circleville, Ohio. Tr. Vol. 2 at 182. As such, Allianz argues it has no duty to defend these claims. And because there is "nothing for Allianz to defend," Technicolor entities "are not entitled to reimbursement of any fees or costs with respect to those arbitrations." Appellant's Br. at 45.

[63] Narrowing the issues, we note that all the defense fees and costs at issue in this matter relate to the Second Class Action and were only incurred after the filing of the Second Class Action. *See* Appellant's Supp. App. Vol. 2 at 122-23. The arbitration costs are included in those fees and costs. Thus, even if some arbitration costs were incurred before 2016, those costs are not a part of the award subject to this appeal. Similarly, arbitration costs incurred before the Allianz Policies took effect in 2014 are not included. While the issues in the Second Class Action were not formally incorporated into the arbitrations until 2021, Technicolor's attorney testified that work was done earlier than 2021 to "pursue GE for amounts to reduce [Technicolor's] liability with respect to the [Second Class Action] in Taiwan." Tr. Vol. 3 at 29. Technicolor therefore argues that the arbitrations, while initiated by Technicolor, were done to reduce

its overall liability. Indeed, the *Thomson* panel agreed that pursuing indemnity claims against third parties "assists the insurers by minimizing what they must pay." *Thomson*, 11 N.E.3d at 1025. *Thomson* also referenced cases where federal courts allowed such costs. *See,* e.g.*, Great West Cas. Co. v. Marathon Oil Co.*, 315 F.Supp.2d 879, 882 (N.D. Ill. 2003) ("[c]laims and actions seeking third-party contribution and indemnification are a means of avoiding liability just as clearly as is contesting the claims alleged to give rise to liability"). We too find *Great West Cas. Co.* persuasive. The evidence in the record demonstrates that the arbitrations were pursued to limit Technicolor's liability in the Second Class Action. As a co-defendant in the Second Class Action, GE could potentially indemnify Technicolor. Had Allianz provided a defense from the beginning of the Second Class Action, it could have directed defense strategy and decided not to pursue arbitrations to limit Technicolor's liability. But it did not. Therefore, we affirm the Commercial Court's holding that Allianz is obligated to pay costs related to Technicolor's arbitration proceedings.

## Conclusion

[64] For the foregoing reasons, we affirm the Commercial Court's holding on all presented issues. Neither the known loss doctrine nor the deemer clauses in the Umbrella Policies preclude coverage for Technicolor's defense costs and attorneys' fees for the Second Class Action. Allianz owes a duty to indemnify Technicolor for fees and costs associated with Technicolor S.A. The

Commercial Court did not abuse its discretion by ordering prejudgment interest on Technicolor's attorneys' fee invoices, calculated from the date the invoices were due. Finally, Allianz is obligated to pay costs related to Technicolor's arbitration proceedings.

Affirmed.

Bailey, J., and Vaidik, J., concur.

ATTORNEYS FOR APPELLANT ALLIANZ GLOBAL RISKS US INSURANCE COMPANY
Katherine M. Haire
Lyndsay I. Ignasiak
Reminger Co., L.P.A.
Indianapolis, Indiana

John P. O'Malley
Karbal, Cohen, Economou, Silk & Dunne, LLC
Chicago, Illinois

ATTORNEYS FOR APPELLEES TECHNICOLOR USA, INC.; TECHNICOLOR S.A.; THOMSON CONSUMER ELECTRONICS TELEVISION TAIWAN LIMITED; THOMSON CONSUMER ELECTRONICS BERMUDA LIMITED
George M. Plews
Sean M. Hirschten
Ryan T. Leagre
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana